IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD J. CLARSON, as ADMINISTRATOR of LOCAL NO. 731, I.B. OF T., EXCAVATORS AND PAVERS PENSION TRUST FUND, and LOCAL NO. 731, I.B. OF T., EXCAVATORS AND PAVERS PENSION TRUST FUND, Plaintiffs, v. SCORPIO EXCAVATING, INC., AMBER LEASING CORP., CIRCLE X CORP., LUCKY V. CORP., and VIRGO INVESTMENTS IN PROPERTIES, INC., Defendants. | Case No. 19 C 5488 Magistrate Judge Beth W. Jantz |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Local No. 731, I.B. of T., Excavators and Pavers Pension Trust Fund ("Fund") and Richard Clarson, as Administrator of the Fund, bring this action against Defendants Scorpio Excavating, Inc. ("Scorpio"), Amber Leasing Corp. ("Amber Leasing"), Circle X Corp. ("Circle X"), Lucky V Corp. ("Lucky V"), and Virgo Investments in Properties, Inc. ("Virgo Investments") to collect statutory withdrawal liability owed to the Fund under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. The parties have consented to the jurisdiction of the United States Magistrate Judge under 28 U.S.C. § 636(c).

Plaintiffs now move for summary judgment on Count I of the Amended Complaint against Scorpio, Count II against Amber Leasing, Lucky V, and Virgo Investments, and Count III against Circle X. [Dkt. 39, Pls.' Mot. for Summ. J.; dkt. 41, Pls.' Mem. Supp. Summ. J.] For the reasons explained below, the Court grants Plaintiffs' motion in its entirety.

## FACTS

The following facts are undisputed unless otherwise stated. The Fund is a multiemployer, defined benefit pension plan administered in Burr Ridge, Illinois, and funded by contributions from employers that have collective bargaining agreements with Excavating, Grading, Asphalt, Private Scavengers, Salesroom Garage Attendants and Linen and Laundry Drivers Local Union No. 731, I.B. of T. [Dkt. 55, Defs.' Resp. to Pls.' Statement of Material Facts, ¶¶ 1–2.] Scorpio has been one such employer required to contribute to the Fund; it is an Illinois corporation with its principal place of business in this judicial district. [Dkt. 55 ¶¶ 3–5.]

From prior to 2007 through September 2017, Scorpio made monthly contributions to the Fund as outlined in its submitted monthly reports, which identified Robert Kicinski as the sole bargaining unit employee. [See dkt. 60, Pls.' Resp. to Defs.' Statement of Addt'l Facts.] The Fund occasionally audited Scorpio but accepted those reports as true and accurate except for the reports for the years 2008 and 2009. [See dkt. 60.]

In 2009, the Fund sued Scorpio, seeking liability for unpaid contributions from January 1, 2008 to December 31, 2009. [See dkt. 60.] *See Handcock v. Scorpio*

2

*Excavating, Inc.*, No. 09 C 7582 (N.D. Ill. Oct. 20, 2010). In October 2010, the Fund and Scorpio entered into a consent decree in that matter. [See dkt. 60.] Scorpio did not admit liability but agreed to pay $70,000 to resolve the litigation. [See dkt. 60; dkt. 53-11, Consent Decree, ¶ 6.] Additionally, the consent decree provided that nothing in it "limit[s] or modif[ies] the Funds' right to recover from [Scorpio] any additional contributions or liquidated damages which may become due or which may be found due as a result of [ ] an audit for any time period that the Funds did not previously audit." [Dkt. 53-11 at ¶ 10.]

On May 30, 2019, the Fund sent Scorpio a notice asserting that Scorpio owed $174,676 in withdrawal liability for partial withdrawals effective December 31 of 2012, 2013, 2014, and 2015. [Dkt. 40, Pls.' Statement of Material Facts, ¶ 6.][1] The notice provided a payment schedule of 6 quarterly installments to begin in July 2019. [Dkt. 55 ¶ 7.]

Scorpio received the notice on or about July 15, 2019. [Dkt. 40 ¶ 9.][2] Scorpio has not made any installment payments or requested review either informally or through arbitration. [Dkt. 55 ¶ 10.]

---

[1] Defendants purport to dispute whether Plaintiffs sent or they received the May 2019 letter, [dkt. 55 ¶ 6], but they do not provide any record support as required by Northern District of Illinois Local Rule 56.1(b)(3)(B). Thus, the fact is deemed admitted. Fed. R. Civ. P. 56(e); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015). Notably, Scorpio's unsupported denial also contradicts Defendants' Answer in which Scorpio admitted receiving the correspondence on or about July 15, 2019. [See dkt. 16, Defs.' Ans., ¶¶ 14, 16.]

[2] Again, Defendants dispute this fact but do not provide any record support, [dkt. 55 ¶ 9]; it is deemed admitted. Fed. R. Civ. P. 56(e); *Curtis*, 807 F.3d at 218–19.

On August 13, 2019, the Fund sent Scorpio a letter stating that Scorpio was required to immediately pay the owed withdrawal liability in full because the requirements for acceleration under the collective bargaining agreement had been met. [Dkt. 55 ¶ 15.] According to the Fund, it had learned that Scorpio had few assets and might not be able to afford an attorney, which led it to believe that Scorpio was insolvent and/or had failed to maintain a reasonable ratio of assets. [Dkt. 55 ¶ 15.]

Robert Kicinski was the 100% owner of Scorpio from December 2012 through 2015. [Dkt. 55 ¶¶ 26–38.] Robert's wife during this time, Veronica Kicinski ("Veronica"), owned 100% of Lucky V. [Dkt. 55 ¶¶ 23, 32.] The couple split ownership of Amber Leasing during the December 2012 to December 2014 periods; as of December 2015, Veronica owned 100% of Amber Leasing. [Dkt. 55 ¶¶ 29–30.] The Kicinskis also split ownership of Virgo Investments from December 2012 to December 2015. [Dkt. 55 ¶ 28.] As of December 31, 2015, Veronica owned 100% of Circle X. [Dkt. 55 ¶ 31.] Amber Leasing, Lucky V, Circle X, and Virgo Investments have admitted that they are trades or businesses. [Dkt. 55 ¶ 38.]

## PROCEDURAL HISTORY

On August 14, 2019, Plaintiffs brought this action against Scorpio seeking the withdrawal liability plus interest, liquidated damages, and attorneys' fees and costs. [Dkt. 1, Compl., at 7.] Plaintiffs later amended their complaint to add Amber Leasing, Lucky V, Circle X, and Virgo Investments as defendants under the theory

4

that they all were a single employer pursuant to ERISA. [Dkt. 24, Am. Compl., at 2–7.]

Plaintiffs now move for summary judgment on all counts of the Amended Complaint. [Dkt. 39; dkt. 41.]

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 568 (7th Cir. 2017). The non-moving party, however, must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Id.* The Court disregards responsive statements that are inadequately supported or otherwise do not comport with Northern District of Illinois Local Rule 56.1, and deems admitted all asserted facts that are properly supported by the record. *Curtis*, 807 F.3d at 218–19.

## DISCUSSION

Under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*, an employer who fully or partially withdraws from a multiemployer pension plan must pay its share of the pension plan's "unfunded vested benefits," which is known as its "withdrawal liability." 29 U.S.C. § 1381; *see Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192, 196 (1997). As relevant here, under

29 U.S.C. § 1385, an employer is subject to partial withdrawal liability "when [its] contributions decline substantially over a period of several years." *Cen. States, S.E. and S.W. Areas Pension Fund v. Safeway, Inc.*, 229 F.3d 605, 607–08 (7th Cir. 2000) (and explaining the rationale behind this rule). In very general terms, to calculate the appropriate amount of partial withdrawal liability for a given year, the pension plan compares that year's contributions to an average of prior years. *See generally id.* at 611 (explaining precise formula).

"As soon as practicable" after a complete or partial withdrawal, the pension plan must notify an employer of the liability amount and the schedule of payments, and demand payment. 29 U.S.C. § 1399(b)(1). Within 90 days of receiving notice from the pension plan, the employer may first informally request review of the pension plan's withdrawal liability determination. *See* 29 U.S.C. § 1399(b)(2). Following that informal review, either party may initiate arbitration within 60 days after the earlier of (1) the date of notification to the employer regarding the plan's decision after informal review, or (2) 120 days after the date of the employer's informal request for review. 29 U.S.C. § 1401(a)(1). The parties may also jointly initiate arbitration within 180 days of the plan's demand for payment. *Id.*

Any unresolved disputes "concerning a determination made" under sections 1381 through 1399 of the MPPAA must be handled through arbitration. 29 U.S.C. § 1401(a)(1). If neither side requests arbitration, and the time for doing so passes, the pension plan's requested installments become "due and owing" according to the schedule the pension plan set. *Bay Area Laundry*, 522 U.S. at 197; *see* 29 U.S.C.

6

§ 1401(b)(1). At that point, the pension plan may bring a court action for collection. 29 U.S.C. § 1401(b)(1). Further, if the employer does not initiate arbitration, it waives all defenses in that collection action that it could have raised in arbitration. *See Cent. States, S.E. and S.W. Areas Pension Fund v. N. In. Trucking, LLC*, No. 18 C 6707, 2019 WL 2287803, at *2 (N.D. Ill. May 29, 2019). Thus, "[a]nyone who suspects that he might be . . . subjected to withdrawal liability would be well advised to commence arbitration, so that if a court holds that he is . . . subject to such liability he won't have waived the issues that are reserved for arbitration." *Chi. Truck Drivers v. El Paso Co.*, 525 F.3d 591, 600–01 (7th Cir. 2008) (internal quotation marks and citation omitted).

Plaintiffs argue that they are entitled to summary judgment because Scorpio qualifies as an employer under ERISA, the Fund timely notified Scorpio of its withdrawal liability, and Scorpio has waived any defenses by not initiating arbitration. [Dkt. 41 at 8–11.] Plaintiffs therefore contend that the full amount of withdrawal liability is due and owing. [Dkt. 41 at 8–11.] *See N. In. Trucking*, 2019 WL 2287803, at *2; *see also Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 848 (7th Cir. 2015) ("Failure to initiate arbitration has a simple and adverse consequence—withdrawal is conclusively established and the amount demanded by the pension plan becomes due and owing.").

Scorpio argues in opposition that it has a valid defense that it has not waived and that is properly within this Court's purview: that the consent decree in the 2009 lawsuit has preclusive effect here. [Dkt. 56, Defs.' Mem. Opp. Pls.' Mot. for Summ.

7

J., at 5–9.] Because the Fund agreed to settle the claims for 2008 and 2009 in that prior consent decree, Scorpio contends that res judicata bars the Fund from "ever asserting the claim of unreported hours for this period." [Dkt. 56 at 4.] Scorpio maintains that the Fund is now improperly relying on the hours claimed in the 2009 lawsuit and using them as a basis to calculate later years' partial withdrawal liability. [Dkt. 56 at 4.] As Scorpio sees it, the data that the Fund used to calculate its partial withdrawal liability for 2012 through 2015 is inaccurate because it includes the 2008 and 2009 disputed calculations. [Dkt. 56 at 4.]

Because Scorpio's argument, however, attacks the methodology that the Fund used to determine Scorpio's liability, it is one that could—and should—have been raised in arbitration. *See* 29 U.S.C. § 1401(a)(1) (providing that disputes "concerning a determination made under sections 1381 through 1399 . . . *shall* be resolved through arbitration") (emphasis added); 29 U.S.C. § 1385 (outlining method of calculating partial withdrawal liability). Scorpio does not dispute that it failed to initiate arbitration, [dkt. 56 at 5–6], and accordingly, it has waived its right to assert a faulty calculation now. *See, e.g., Cent. States, S.E. and S.W. Areas Pension Fund v. George Jones Excavating, LLC*, No. 16 C 10331, 2017 WL 5454457, at *4 (N.D. Ill. Nov. 14, 2017) (finding calculation argument waived where defendant did not pursue arbitration).

Contrary to Scorpio's argument, res judicata—which encompasses both issue and claim preclusion—also does not bar this current action. "Issue preclusion applies based on a prior federal judgment when '(1) the issue sought to be precluded

8

[was] the same as that involved in the prior litigation, (2) the issue [was] actually litigated, (3) the determination of the issue [was] essential to the final judgment, and (4) the party against whom estoppel is invoked [was] fully represented in the prior action.'" *Oneida Nation v. Vill. of Hobart*, 968 F.3d 664, 686 (7th Cir. 2020) (citation omitted) (alterations in original). Claim preclusion requires (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *Cent. States, S.E. and S.W. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002). For the causes of action to be identical, they must arise "from the same essential factual allegations." *Horia v. Nationwide Credit & Collection, Inc.*, 944 F.3d 970, 973 (7th Cir. 2019). Claim preclusion "does not bar a claim based upon a new wrong even if the new wrong is related to a prior wrong previously litigated." *Cen. States v. Hunt Truck Lines, Inc.*, No. 00 C 1204, 2001 WL 293079, at *4 (N.D. Ill. Mar. 26, 2001).

The 2009 lawsuit does not preclude this action because the issue here was not litigated in that lawsuit, and, more broadly, the causes of action do not arise from the same core facts. The 2009 lawsuit involved claims for unpaid contributions from 2008 and 2009, [dkt. 56 at 2; dkt. 53-11 ¶ 5; see dkt. 60], whereas in this current case, the withdrawal liability for years 2012 through 2015 are being challenged, [dkt. 1 ¶ 7]. The 2012 to 2015 liability could not have been litigated in the prior lawsuit because judgment in that lawsuit was entered before the liability alleged in this action even arose. [Dkt. 53-11 at 5 (entered Oct. 20, 2010).] Indeed, in the consent decree, the Fund specifically reserved its right to seek future contributions.

9

[Dkt. 53-11 ¶ 10.] Additionally, the 2008 and 2009 contributions are just one part of the calculation of withdrawal liability for 2012 to 2015. Thus, even setting aside that Scorpio has waived its defenses by failing to arbitrate, res judicata does not bar this suit, and Scorpio must pay the full amount of the partial withdrawal liability demanded by the Fund.

Turning to the remaining Defendants—Amber Leasing, Lucky V, Circle X, and Virgo Investments (collectively, the "Common Control Defendants")—ERISA provides that "each trade or business under common control is jointly and severally liable for any withdrawal liability of the others." *McDougall v. Pioneer Ranch L.P.*, 494 F.3d 571, 574 (7th Cir. 2007); *see also* 29 U.S.C. § 1301(b)(1). The Common Control Defendants do not argue that they do not meet this definition nor that they are not, along with Scorpio, a "single employer." 29 U.S.C. § 1301(b)(1). [See dkt. 56 at 9–10.] Instead, they raise laches as a defense, contending that the Fund did not follow the statutory requirement of notifying Scorpio "[a]s soon as practicable," 29 U.S.C. § 1399(b)(1), about the withdrawal liability and that they suffered resulting prejudice. [Dkt. 56 at 9–10.] According to the Common Control Defendants, the Fund knew as of January 1, 2010 that Scorpio owed partial withdrawal liability as the Fund regularly reviewed the monthly contribution reports but did nothing until about 9 years later in 2019. [Dkt. 56 at 9–10.]

The issue of timeliness, however, falls squarely under the mandatory arbitration provision of the MPPAA, and thus Defendants have waived it by not raising it in arbitration. *See Hancock v. Koplos Excavating, Inc.*, No. 11 C 1428,

10

2013 WL 3819610, at *3 (N.D. Ill. July 23, 2013) (finding timeliness argument waived where defendant did not initiate arbitration under the MPPAA); *Cent. States, S.E. and S.W. Areas Pension Fund v. Mars Leasing Co.*, No. 02 C 9295, 2003 WL 21995192, at *3 (N.D. Ill. Aug. 18, 2003) (same, rejecting laches argument). They seemingly attempt to skirt their failure to timely arbitrate by blaming their later addition as named defendants in this lawsuit, [dkt. 56 at 10], but that argument is meritless. Because the Common Control Defendants along with Scorpio are a "single employer," the notice to Scorpio is construed as a notice to the Common Control Defendants as well. *See Cent. States, S.E. and S.W. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1375 (7th Cir. 1992).

Accordingly, the laches argument is a nonstarter, and the Common Control Defendants are jointly and severally liable for Scorpio's partial withdrawal liability.

## DAMAGES

Because Defendants are each jointly and severally liable, see *McDougall*, 494 F.3d at 574, the Court now turns to what damages Plaintiffs may recover. Under ERISA, late withdrawal liability payments are treated as delinquent employer contributions and are therefore enforceable under Title I of ERISA, which entitles the Fund to unpaid contributions, interest, liquidated damages, and attorneys' fees and costs. See 29 U.S.C. §§ 1132(g)(2), 1451(e). The award of interest, liquidated damages, and attorneys' fees and costs is mandatory. *George Jones,* 2017 WL 5454457, at *4; *Slotky*, 956 F.2d at 1377.

11

The Fund contends that it is entitled to (1) the amount of $174,676 for withdrawal liability; (2) interest on that amount at the rate of 5.5% from July 20, 2019 through September 30, 2019, at the rate of 5.25% from October 1, 2019 through December 31, 2019, and at the rate of 4.75% from January 1, 2020 through the date of judgment; (3) liquidated damages in the amount of $34,935.20; and (4) reasonable attorneys' fees and costs. [Dkt. 41 at 21.] Defendants do not specifically address damages. [See dkt. 56.] Accordingly, the parties are directed to meet and confer and attempt to reach agreement on the currently undetermined amounts—that is, the interest, costs, and fees to be awarded.

## CONCLUSION

For the reasons explained above, the Court GRANTS Plaintiffs' motion for summary judgment, [dkt. 39; dkt. 41]. The parties are directed to meet and confer regarding the appropriate interest, costs, and fees to be awarded pursuant to this order. If agreement is reached, the Fund should submit a proposed judgment order within 14 days of this order. If no agreement is reached, the parties should submit their respective positions in filings not to exceed 5 pages each by the same date.

E N T E R:

Dated: September 16, 2020

*Beth W Jantz*

BETH W. JANTZ
United States Magistrate Judge